UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BONNIE SCHNEIDER,

       Plaintiff,

                                     File No.  1:07-CV-94

v.

                                     HON. ROBERT HOLMES BELL

AMERISOURCEBERGEN DRUG
CORPORATION,

       Defendant.

_____/

## O P I N I O N

     This action alleging gender discrimination and retaliation in employment is before the Court on the employer's motion for summary judgment.  For the reasons that follow the motion will be granted.

## I.

     Defendant AmerisourceBergen Drug Corporation is a pharmaceutical distribution and services company.   Plaintiff Bonnie Schneider was employed by Defendant at its Williamston, Michigan facility from October 1997 until her termination on June 30, 2006.

     Plaintiff was hired by Defendant as an order filler.  (Dkt. No.  26, Pl.'s Resp., Ex. 1, Schneider Dep. 46, 53.)  She was promoted to Order Filling Lead in 2001, and then to Order Filling Supervisor in November 2003.  (Schneider Dep. 81, 85; Dkt. No. 24, Def.'s Mot. for

Summ. J., Ex. 5.)  There were two Order Filling Supervisors, Plaintiff and Robert Rogers.

Plaintiff and Rogers were supervised by the Night Manager, Matt Stine.  (Schneider Dep.

91; Pl.'s Resp., Ex. 6, Stine Dep. 3-4.)  Plaintiff and Rogers were responsible for four Order

Filling Leads, one woman and three men and twenty-five to thirty Order Fillers.  (Schneider

Dep. 18, 120.)

Defendant periodically sends Order Fillers and Order Filling Leads on out-of-state

trips to assist other divisions with conversions to its computer system. (Schneider Dep. 161.)

Stine was responsible for deciding which Order Fillers and Leads to send on these trips.

(Schneider Dep. 162-63; Pl.'s Resp., Ex. 6, Stine Dep. 10.)

In October 2005, Sue Lambert, the sole female Order Filling Lead, asked Schneider

why the male Leads were always sent on out-of-state business trips and Sue Lambert never

was.  (Schneider Dep. 127-28.)  Schneider went to Human Resources Manager Cathy

Burgess and told her that Sue Lambert was wondering why only male Leads were selected

to go on the out-of-state trips and she was not.  (*Id.* at 127-28, 167-68.)

At Plaintiff's 2005-2006 evaluation on May 2, 2006, Stine gave Plaintiff an overall

rating of  "partially meets expectations."  (Pl.'s Resp., Ex. 12, May 2006 Eval.)  On May 9,

2006, Stine placed Plaintiff on a sixty-day Performance Issue Plan ("PIP").  (Pl.'s Resp., Ex.

13, PIP.)

On June 4, 2006, the Williamston facility was notified that it would have to cut staff

as part of a reduction-in-force ("RIF").  (Def.'s Mot. for Summ. J., Ex. 12, Email to

Lindberg.)  Bob Lindberg, Defendant's Vice-President Distribution Center Manager, advised Stine that he would have to eliminate one of his two Order Filling Supervisors.  (Stine Dep. 12.)  Plaintiff was terminated on June 30, 2006.  (Def.'s Mot. for Summ. J., Ex. 6.)  She was chosen for termination over Rogers, who had two years less seniority.  The June 2006 RIF resulted in the layoff of seven employees.  (Pl.'s Resp., Ex. 11, Burgess Dep. 14-15; Pl.'s Resp., Ex. 14, Def.'s Resp. to Interrog. 13.)

Plaintiff filed this action in the Circuit Court for the County of Ingham, State of Michigan, Case No. 06-1592-WZ.  She alleged in her complaint that Defendant discriminated against her on the basis of gender and retaliated against her for making a complaint regarding gender discrimination, in violation of the Michigan Elliot-Larsen Civil Rights Act ("CRA"), M.C.L. §§ 37.2101-.2804.  (Dkt. No. 1, Notice of Removal, Ex. 2, Compl.)  Defendant removed the action to federal court pursuant to 28 U.S.C. §§ 1332, 1441 on the basis of diversity of citizenship.  This matter is currently before the Court on Defendant's motion for summary judgment.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If

Defendant carries its burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id. See generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

**A. Gender Discrimination**

In Count I of her complaint Plaintiff alleges that she was discriminated against on the basis of her gender because 1) she was not sent on out-of state business trips like men were until she complained of this practice,[1] 2) that in response to this complaint and due to her gender her supervisor issued her a "partially meets" evaluation, and 3) she was terminated

---

[1]During discovery Plaintiff clarified that she did not make the complaint about out-of-state trips on her own behalf, but on behalf of another female Order Filling Lead.

4

during a RIF instead of a similarly situated man who had less seniority.  (Compl. ¶¶ 18, 19, 20, 23-24.)

The Michigan CRA provides that an employer shall not discharge or otherwise discriminate against an individual with respect to  employment, compensation, or a term, condition or privilege of employment, because of sex.  M.C.L. § 37.2202.  "Proof of discriminatory treatment in violation of the CRA may be established by direct evidence or by indirect or circumstantial evidence." *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124, 132, 666 N.W.2d 186 (2003).  Plaintiff has not come forward with direct evidence that she was discriminated against on the basis of her gender.  Accordingly, this case must be evaluated under the burden-shifting approach set forth in *McDonnell-Douglas v. Green*, 411 U.S. 792 (1973).  *Sniecinski*, 469 Mich. at 133.  Under this approach, once the plaintiff presents a rebuttable prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  If the defendant produces such evidence, the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination.  *Id.* at 134.  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Hazle v. Ford Motor Co.*, 464 Mich. 456, 464 n.8, 628 N.W.2d 515 (2001) (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

In order to establish a prima facie case of gender discrimination, a plaintiff must show that: (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified for the position, and (4) she was treated less favorably than a similarly-situated male employee for the same or similar conduct. *Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999); *Lytle v. Malady*, 458 Mich. 153, 172-78, 579 N.W.2d 906 (1998).

There is no question that Plaintiff has met the first three elements of her prima facie case.  Plaintiff is a member of a protected group; her employer's decision to discharge her is "a classic example of adverse employment action," *Grace v. USCAR*, No. 06-2509, ---F.3d ---, 2008 WL 782470, at *17 (6th Cir. March 26, 2008), and it is undisputed that she was qualified for her position.  However, the parties disagree as to whether Plaintiff has shown that she was treated less favorably than a similarly-situated male employee for the same or similar conduct.

Plaintiff contends that she has met the fourth element by showing that she was chosen for termination rather than Rogers even though they held the same position, they performed identical job duties.  (Pl.'s Rep. Br. 16.)  Defendant agrees that Plaintiff and Rogers both worked for Stine in the same capacity.  Defendant nevertheless contends that Plaintiff has not shown that she and Rogers were similarly situated because of significant differences in their work performance and employment history.

"'[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case.'" *Grace*, 2008 WL 782470, at *17 (quoting *Wexler v. White's Fine Furniture*, 317 F.3d 564, 574 (6th Cir. 2003)). Defendant's explanation for why Plaintiff and Rogers were not similarly situated is the same as Defendant's asserted nondiscriminatory reason for terminating Plaintiff rather than Rogers. Because this is not an appropriate consideration when analyzing Plaintiff's prima facie case, and because Defendant has not otherwise challenged Plaintiff's contention that she and Rogers were similarly situated, the Court concludes that Plaintiff has made out her prima facie case.

The burden accordingly shifts to Defendant to articulate a legitimate, nondiscriminatory reason for selecting Plaintiff rather than Rogers for discharge during the RIF. In determining whether an employment decision is a "legitimate, nondiscriminatory" one, courts must not analyze the "soundness" of that decision. In other words, courts must not second guess whether the employment decision was "wise, shrewd, prudent, or competent." *Hazle v. Ford Motor Co.*, 464 Mich. 456, 465 n.7, 628 N.W.2d 515 (2001) (quoting *Town v. Mich. Bell Tel. Co.*, 455 Mich. 688, 704, 568 N.W.2d 64 (1997)). "Instead, the focus is on whether the decision was 'lawful,' that is, one that is not motivated by a 'discriminatory animus.'" *Id.* (quoting *Burdine*, 450 U.S. at 257).

Defendant has met this burden. Defendant has presented evidence that the decision to terminate Plaintiff was based on performance. The decision to terminate Plaintiff as part

7

of the RIF was made by Lindberg, in consultation with Human Resources Manager Burgess, after receiving recommendations and input from Operations Manager Ormsby and Night Manager Stine.  (Def.'s Resp. to Interrog 12; Burgess Dep. 16; Stine Dep. 11-14.)  Stine recommended that Plaintiff be terminated because her performance was not as good as Rogers' performance.  (Stine Dep. 15.)  Rogers had never received a "partially meets" rating.  Instead he had consistently received "fully meets" and "exceeds expectations" ratings.   (Rogers Dep. 9-10.)  In contrast to Rogers, Plaintiff had received a "partially meets" rating on her May 2006 performance review and was on a performance improvement plan ("PIP") at the time of the RIF.  (Plaintiff Dep. 19-20, 207; Pl.'s Resp., Ex. 12, May 2006 Eval.; Pl.'s Resp., Ex. 13, PIP.)

The reasons given by Defendant are supported by the evidence and are sufficient to rebut the presumption of discrimination.  The burden accordingly shifts back to Plaintiff to show that Defendant's reasons were not the true reasons, but a pretext for discrimination.

There are three ways that a plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reason for an adverse employment action is pretextual:

> (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision.

*Feick v. County of Monroe*, 229 Mich. App. 335, 343, 582 N.W.2d 207, 212 (1998) (citing *Dubey v. Stroh Brewery Co.*, 185 Mich. App. 561, 565-66, 462 N.W.2d 758 (1990)).

Plaintiff contends that the articulated reason is pretextual because Rogers had a more serious disciplinary history. Plaintiff has presented evidence that Rogers was disciplined, coached, or put on a performance improvement plan in 2005 for making an inappropriate comment to a female associate regarding her anatomy. (Pl.'s Resp., Ex. 9, Rogers Dep. 6; Stine Dep. 5-7, 17.) Rogers received verbal or written counseling from Stine and Stine recommended that he attend a class on speaking with associates. (Rogers Dep. 7-8.) Rogers' disciplinary history is not significantly different from Plaintiff's own. Plaintiff was reprimanded for calling one of her Leads an "asshole." (Schneider Dep. 114.) More importantly, Rogers' disciplinary history does not create an issue of fact as to whether Defendant's articulated reason for terminating Plaintiff was false, was not Defendant's actual reason, or was insufficient to justify its decision.

Plaintiff contends that the articulated reason is pretextual because she did not deserve the low ratings on her work performance. A poor performance evaluation does not constitute adverse action for purposes of her CRA claim. *Pena v. Ingham County Road Comm'n*, 255 Mich. App. 299, 312, 660 N.W.2d 351 (2003) (quoting *White v. Burlington N & SF R Co.*, 310 F.3d 443, 450 (6th Cir. 2002)). Nevertheless, it can be considered to the extent it reflects discriminatory animus and part of a plan for ultimate termination. *Few v. Yellow Freight Sys., Inc.*, 845 F.2d 123, 124-25 (6th Cir. 1988).

Although Plaintiff contends that her "partially meets" rating is evidence of discrimination, she has not come forward with any evidence to support such an inference

other than her disagreement with Stine's conclusion that her performance warranted the low performance rating and the PIP.  (Schneider Dep. 195-208.)  An employee "'does not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his supervisors.'"  *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) (quoting *Kephart v. Inst. of Gas Tech.*, 630 F.2d 1217, 1223 (7th Cir. 1980)). "The soundness of an employer's business judgment . . . may not be questioned as a means of showing pretext."  *Dubey*, 185 Mich. App. at 566.

Finally, Plaintiff contends that the articulated reason is pretextual because Defendant has taken contradictory stances on what the RIF policy required in deciding which employee to terminate, and that these contradictions raise a question of fact for the jury regarding Defendant's legitimate business reason.  (Pl Resp. Br. 24.)  In support of this argument Plaintiff notes that the Sixth Circuit has held that a jury may consider an employer's deviation from its own lay-off procedure as evidence that discrimination has occurred. *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 422 (6th Cir. 1999)

There is no inconsistency in the evidence as to the criteria that were considered in deciding who to terminate during a RIF:  performance, attendance, and years of service. (Burgess Dep. 11, 15; Stine Dep. 15; Def.'s Resp. to Interrog. 13.).  Plaintiff is correct, however, that there is some apparent inconsistency as to how many years of performance were considered.  Burgess testified that the company policy for layoffs was to consider performance for the last year.  (Burgess Dep. 11, 15.)  Stine testified that he would look at

employees' overall performance from the entire time they had been working for Defendant. (Stine Dep. 14-16.)  He later testified that he looked at Plaintiff's overall performance between May 2005 and May 2006.  (Stine Dep. 24, 27-28.)  Defendant stated in response to interrogatories that it considered the last two years of an employees' performance, attendance, and years of service.  (Def.'s Resp. to Interrog. 13.)  Plaintiff is also correct that there was some inconsistency as to how these factors were applied.  Burgess and Stine testified that they would consider performance first.  If performance was equal, they would look at attendance.  If attendance was equal, they would look at years of service.  (Burgess Dep. 11; Stine Dep. 15).  However, in its responses to interrogatories Defendant indicated that the decision on who to terminate was made after considering all the factors.  (Def.'s Resp. to Interrog. 13.)

Nevertheless, the inconsistencies noted by Plaintiff are not sufficient to create a material issue of fact for trial on the issue of pretext.  The inconsistencies do not refute the consistent testimony from all of the decision makers that performance was key, and that performance was the basis for selecting Plaintiff rather than Rogers for termination.  Neither do they refute the uncontroverted fact that at the time of the RIF and her termination, Plaintiff was the only supervisor who was on a PIP and who had received a "partially meets" annual performance rating in May 2006.  The inconsistencies do not tend to suggest that Defendant deviated from its normal procedure in order to terminate Plaintiff rather than Rogers.  The evidence as a whole does not tend to show that Defendant's statement that it

selected Plaintiff for termination on the basis of performance had no basis in fact, that it was not the actual factor motivating the decision, or that it was insufficient to justify selecting her for termination.

Plaintiff has failed to establish a genuine issue of material fact that her selection for termination during the RIF was based on her gender. Defendant is accordingly entitled to summary judgment on Plaintiff's gender discrimination claim.

## B. Retaliation

Plaintiff contends that Stine retaliated against her following her complaints of gender discrimination. Plaintiff has not presented direct evidence in support of her retaliation claim. Accordingly, her retaliation claim must also be evaluated under the *McDonnell-Douglas* burden-shifting approach. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008).

In order to make out a prima facie case of unlawful retaliation a plaintiff must show (1) that she was engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 491 (6th Cir. 2006); *Pena*, 255 Mich. App. at 310-11.

Plaintiff cannot make out a prima facie case of retaliation in violation of the CRA without establishing that she engaged in activity protected under the CRA. *Barrett v.*

*Kirtland Cmty. College*, 245 Mich. App. 306, 318, 628 N.W.2d 63 (2001). The CRA specifically prohibits retaliation or discrimination because "the person has opposed a violation of this act, or because the person has made a charge . . . under this act." M.C.L. § 37.2701(a). The activity protected under the CRA is defined in M.C.L. § 37.2701(a). As it relates to this action, "protected activity" means opposing a violation of the act or making a charge under the act. *Id.* In order to be engaged in "protected activity," an employee need not cite the CRA, but "must do more than generally assert unfair treatment." *Barrett*, 245 Mich. App. at 318-19. "The employee's charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to the CRA." *Id.* at 319.

Although Plaintiff contends that she reported Lambert's complaint of gender discrimination or disparate treatment to Burgess, (Pl.'s Resp. 2, 6, 7), in order to determine whether Plaintiff's conversation with Burgess in October 2005 amounted to a charge made under the CRA or opposition to a violation of the CRA the Court must consider the evidence presented.

During her deposition Plaintiff had several opportunities to describe her conversation with Burgess. Plaintiff characterized her conversation with Burgess as follows:

> Q:    Were there any leads that you felt were treated unfairly by the company?
> A.    Yes.
> Q:    Who?
> A.    Sue Lambert.
> Q:    Why?

A:     Because when male leads were being sent to different companies around the country, they never seemed to ask her and she asked me why one day and I went to Cathy Burgess and I asked her why and I think within a couple of days Bob Lindberg came in and said Bonnie, you and Sue are being sent to Eden Prairie in Minnesota.  I really didn't want to go anywhere, I was just trying to -- I was just trying to find out for Sue why it was always the male leads.

(Schneider Dep. 127-28.)

Q:     And when you went to Cathy to complain, did you . .. what did you tell Cathy?

A:     I said -- it was always very laid back in her office and I just told here that Sue had an issue and she was just wondering about it, you know, it was just a very casual conversation and Cathy said she'd look into it.

Q:     Did you say that -- what exactly did you tell her?

A:     Probably that Sue was wondering why only certain male leads went on all the trips and she didn't.

(Schneider Dep. 167-68.)

Q:     Did you specifically ask or tell -- did you specifically tell Cathy Burgess that Sue Lambert wasn't being sent out of state  because she is a woman?

A:     I don't believe so.  I believe I asked her why wasn't Sue Lambert being sent out of state and leads taking turns.

Q:     So am I correct that this was more of just a conversation?

A:     Right.

Q:     And that you were just inquiring?

A:     Right.

(Schneider Dep. 171-72.)

Burgess does not recall Plaintiff ever making any comments about the male Leads being sent out of state and not the female Leads.  (Pl.'s Resp. Br., Ex. 11, Burgess Dep. 4). Burgess testified that if she had heard a complaint that male employees were being treated differently than female employees, she would have conducted an investigation.  (Burgess Dep. 5.)

14

Plaintiff's inquiry on behalf of the sole female lead as to why that female lead was not treated in the same manner as the three male leads does not clearly convey the specter of a gender discrimination claim. The inquiry could just as easily have been understood as conveying a sense of general unfairness, or simply a desire for information relating to one individual. Defendant has presented evidence, and Plaintiff has acknowledged, that the number of men and women Order Fillers who were sent on out-of-state business trips was approximately equal. (Dkt. No. 24, Def.'s Mot. for Summ. J., Ex. 11; Schneider Dep. 167.) Based upon Plaintiff's own description of her meeting with Burgess, and Defendant's history of sending an equal number of men and women on out-of-state business trips, the Court concludes that Plaintiff's conversation with Burgess would not have alerted a reasonable employer that Plaintiff was objecting to unlawful gender discrimination in violation of the CRA. Accordingly, Plaintiff's conversation with Burgess did not, as a matter of law, rise to the level of protected activity.

Furthermore, even if Plaintiff had raised an issue of fact as to whether she engaged in protected activity, the Court concludes that she still cannot establish that this conversation was a significant factor in her selection for termination under the RIF. "Although Michigan courts assess claims of retaliation under the ELCRA using the same general framework as that used by federal courts, the standard for causation is higher." *Mickey*, 516 F.3d at 523, n.2 (citation omitted). "To establish causation, the plaintiff must show that his participation in activity protected by the CRA was a 'significant factor' in the employer's adverse

employment action, not just that there was a causal link between the two." *Barrett*, 245

Mich. App. at 315.  Plaintiff attempts to meet this burden by arguing that she received poor

performance reviews from Stine only after she spoke to Burgess about Lambert not being

selected for out-of-state travel.

Plaintiff's argument relies exclusively on temporal proximity.  Temporal proximity

alone, however, will rarely support an inference of retaliatory discrimination:

> Where an adverse employment action occurs very close in time after an
> employer learns of a protected activity, such temporal proximity between the
> events is significant enough to constitute evidence of a causal connection for
> the purposes of satisfying a prima facie case of retaliation.  But where some
> time elapses between when the employer learns of a protected activity and the
> subsequent adverse employment action, the employee must couple temporal
> proximity with other evidence of retaliatory conduct to establish causality.

*Mickey*, 516 F.3d at 525.

As previously noted, the adverse action in this case is Plaintiff's termination, not her

poor performance evaluations.  Plaintiff's termination did not occur until some eight months

after her travel conversation with Burgess.  Accordingly, Plaintiff must show more than a

temporal proximity to establish a causal connection between her alleged protected activity

and her termination.

Plaintiff's theory is that Stine retaliated against her by giving her low performance

evaluations, which ultimately led to her selection for termination during the RIF.  Although

Plaintiff's performance ratings in mid-year 2005 and in May 2006 were lower than her

previous performance ratings, this evidence does not support a finding that they were

triggered by her travel conversation with Burgess.  There is no evidence that Stine was reprimanded for not sending Lambert on out-of-state trips, or that Stine expressed any anger or concern relating to Plaintiff's discussion of this issue with Burgess.  Moreover, many of the performance problems identified by Stine in May 2006 were documented prior to Plaintiff's October 2005 conversation with Burgess.  For example, in May 2004, before Stine became her supervisor, Plaintiff received "partially meets" ratings in four sub-categories, and she was advised to "continue on working on your people skills, and being approachable for all associates."   (Pl.'s Resp., Ex. 8, 2004 Eval.)  In May 2005, prior to Plaintiff's travel discussion with Burgess, Plaintiff received "partially meets" ratings in the following five sub-categories:   taking personal responsibility for meeting the needs customers in a professional and reliable manner, responding to requests for help from other associates, appropriately responding to business situations, motivating associates to perform effectively, and setting a good example for others. (Pl.'s Resp., Ex. 10, May 2005 Eval. at 2-5.)  The May 2005 evaluation noted that Plaintiff's areas for improvement included remaining positive with associates, getting more familiar with other departments and aspects of the warehouse, and improving on being accessible on the floor for associates.  (*Id.* at 7.)  The specific goals identified were maintaining professionalism toward associates, increasing more knowledge of the cage/vault area, and spending more time in the warehouse and answering more questions without hesitation.  (*Id.*)

When Stine conducted Plaintiff's mid-year 2005 evaluation he noted that Plaintiff "needs to be willing to offer her order filling personnel to other departments with a more positive approach," and that Plaintiff "could spend more time on the floor during production hours." (May 2005 Eval.) Stine concluded in the 2005 mid-year review that he would currently rank Plaintiff at a "partial meets overall rating at this time based on the fact that she has not shown any strides toward her goals that were set in May." (Ex. 10, at 6.)

Plaintiff testified that she had no issues with any of these performance reviews, yet she disagreed with all of Stine's "partially meets" rankings on her May 2006 evaluation. (Schneider Dep. 188, 205.) Significantly, Plaintiff did not complain about the May 2006 evaluation or being placed on the PIP. (*Id.* at 215-16.) Instead, after receiving her yearly evaluation and being placed on the PIP, Plaintiff altered her behavior at work and Stine advised her that her performance was improving. (Stine Dep. 8; Schneider Dep. 212, 218-19.) On the evidence presented the Court concludes that Plaintiff has failed to establish that her travel conversation with Burgess was a significant factor in her performance review or in her ultimate termination.

Because Plaintiff has failed to show protected activity and, independently, because she has failed to show causation, she has failed to make out a prima facie case of retaliation. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

**III.**

For the reasons stated above, Defendant's motion for summary judgment will be granted and judgment will be entered in Defendant's favor.

An order and judgment consistent with this opinion will be entered.


Date:    April 8, 2008              /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE